SECOND DIVISION
FILED: March 30, 2010

No. 1-09-0162

MELROSE PARK SUNDRIES, INC.,    )       Appeal from the Circuit
                              )       Court of Cook County
     Plaintiff-Appellant,     )
                              )       No. 07 L 1072
        v.                )
                              )
DON CARLINI,               )       The Honorable
                              )       Lee Preston,
     Defendant-Appellee.      )       Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Melrose Park Sundries, Inc. (Melrose Park), appeals from an order of the circuit court granting summary judgment in favor of the defendant, Don Carlini (Carlini),[1] on the plaintiff's claim of negligence. For the reasons that follow, we affirm the judgment of the circuit court.

The pleadings, depositions, and written discovery established the following relevant facts. Melrose Park was the corporate owner of a packaged liquor and sundries store at 2318 West North Avenue in Melrose Park, Illinois. Melrose Park and the commercial

---

[1] Carlini died after the complaint was filed but before service was accomplished. Pursuant to section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2006)) (the Code), his widow, Barbara Carlini, was appointed special representative of his estate for purposes of defending the action.

building in which it was located were owned by Faye Alport (Alport), who was the sole officer, director, and shareholder. Constantino A. Taddeo (Taddeo) was responsible for overseeing the day-to-day operations of the store from its opening in approximately February 2004 until it ceased operation in January 2008. Prior to the opening of the store, Alport and Taddeo met with Carlini, a licensed insurance producer, and requested that he obtain insurance for the store. Alport made the decision to purchase insurance through Carlini because he had provided the insurance to her husband and his previous businesses for many years, but Taddeo was responsible for paying the insurance premiums. The insurance policies obtained by Carlini for Melrose Park provided coverage for "liquor liability" and various other forms of coverage for the business and its premises, but did not include workers' compensation insurance coverage. These policies were issued on January 23, 2004, and were subsequently renewed in 2005 for the policy period expiring January 23, 2006.

On October 9, 2005, Sharon Sullivan was injured while working at the Melrose Park store. Melrose Park did not have workers' compensation insurance at the time of Ms. Sullivan's injury. Initially, Alport and Taddeo jointly paid Sullivan's medical expenses. However, this arrangement eventually ceased, and Sullivan subsequently filed a claim for workers' compensation benefits.

No. 1-09-0162

Alport testified at her deposition that, prior to the establishment of Melrose Park, her husband, who died in 2000, and her son operated a business known as Melpark Drugs and Liquors in the same location. According to Alport, her husband had been doing business with Carlini for more than 20 years, and Carlini obtained the insurance for Melpark Drugs and Liquors as well as for the family's other businesses and several commercial properties.

Alport also testified that she and Taddeo met with Carlini once before Melrose Park opened to discuss the insurance for the store. At that meeting, she asked Carlini to "make sure that all of the requirements for insurance [were] taken out, including the building, * * * the liquor, any type of liability policy." According to Alport, Carlini said that he would "handle it," and she did not have any further discussion with him about the insurance policies that he obtained for Melrose Park. Alport admitted that she never specifically requested that Carlini procure workers' compensation insurance for the business, nor did she inquire as to whether workers' compensation insurance was needed. Alport also acknowledged that she did not read or review the policies obtained by Carlini, and she did not discuss Melrose Park's insurance with him when the policies were renewed. Alport further stated that she had more than 30 years of retail and drugstore experience, and she owned a jewelry store, which was located in the building adjacent to Melrose Park. In approximately

3

2003, she specifically requested that Carlini procure workers' compensation insurance for the jewelry store, and he did so. However, she did not direct Carlini to obtain workers' compensation insurance for Melrose Park, as she had done for the jewelry business. Alport also stated that Taddeo was responsible for hiring the employees for the business, and she did not recall whether any employees had been hired when she and Taddeo met with Carlini to arrange for the purchase of insurance.

Taddeo testified at his deposition that he and Alport met with Carlini once before Melrose Park opened to discuss the insurance coverage for the store. According to Taddeo, his participation in that discussion was limited to asking Carlini whether he was going to take care of the insurance, and Carlini responded that he would. Taddeo testified that the issue of workers' compensation was not specifically addressed, and neither he nor Alport explicitly requested that Carlini obtain workers' compensation insurance. Taddeo also stated that Carlini came into the store after the initial meeting, and he asked whether they were "covered on everything." Though Carlini responded in the affirmative, they did not discuss what "everything" encompassed. Taddeo testified that he did not read or review the insurance policies that were obtained by Carlini.

In January 2007, Melrose Park brought suit against Carlini, alleging that he was negligent in failing to obtain or offer to

4

obtain workers' compensation insurance for Melrose Park and in failing to advise that such insurance was required by law. The complaint also alleged that Carlini's negligent conduct proximately caused Melrose Park to suffer damages in that it was required to pay the lost wages and medical expenses of Sullivan and was subject to fines and penalties imposed by the Illinois Workers' Compensation Commission. Carlini moved for summary judgment, contending that Melrose Park had failed to present evidence establishing a duty to procure workers' compensation insurance. The circuit court granted the motion for summary judgment, and this appeal followed.

On appeal, Melrose Park argues that the summary judgment against it must be reversed because the circuit court erred in determining that Carlini had no duty to obtain workers' compensation insurance. We disagree.

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); Murray v. Chicago Youth Center, 224 Ill. 2d 213, 228, 864 N.E.2d 176 (2007). Although a plaintiff need not prove his case during a summary judgment proceeding, he must present some evidentiary facts to support each element of his cause of action.

No. 1-09-0162

Ross v. Dae Julie, Inc., 341 Ill. App. 3d 1065, 1069, 793 N.E.2d 68 (2003). This court reviews the grant or denial of summary judgment de novo. Murray, 224 Ill. 2d at 228.

In order to recover on a claim for negligence, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. First Springfield Bank & Trust v. Galman, 188 Ill. 2d 252, 256, 720 N.E.2d 1068 (1999). The determination of whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court. Marshall v. City of Centralia, 143 Ill. 2d 1, 6, 570 N.E.2d 315 (1991). Where no duty is owed, there is no negligence, and the plaintiff is precluded from recovery as a matter of law. Washington v. City of Chicago, 188 Ill. 2d 235, 239, 720 N.E.2d 1030 (1999). The question of whether a duty exists turns in large part on public policy considerations. Bucheleres v. Chicago Park District, 171 Ill. 2d 435, 457-58, 665 N.E.2d 826 (1996). Statutes enacted by the legislature are expressions of public policy. State Farm Mutual Automobile Insurance Co. v. Smith, 197 Ill. 2d 369, 372, 757 N.E.2d 881 (2001).

In 1996, the General Assembly enacted Public Act 89-638 (Pub. Act 89-638, § 5, eff. January 1, 1997), which added section 2-2201 of the Code. Section 2-2201 provides, in relevant part, as follows:

    "(a) An insurance producer * * * shall exercise

6

ordinary care and skill in renewing, procuring, binding, or placing the coverage *requested by the insured or proposed insured.*

(b) No cause of action * * * against any insurance provider, * * * concerning the sale, placement, procurement, renewal, * * * or failure to procure any policy of insurance shall subject the insurance producer, * * * to civil liability under standards governing the conduct of a fiduciary or fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer * * * of any money that was received as premiums, as a premium deposit, or as payment of a claim.

* * *

(d) While limiting the scope of liability of an insurance producer * * * under standards governing the conduct of a fiduciary or a fiduciary relationship, the provisions of this Section do not limit or release an insurance producer * * * from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance." (Emphasis added.) 735 ILCS

7

No. 1-09-0162

5/2-2201 (West 2006).

In construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. Comprehensive Community Solutions, Inc. v. Rockford School District No. 205, 216 Ill. 2d 455, 473, 837 N.E.2d 1 (2005). The most reliable indication of legislative intent is the plain and ordinary meaning of the statutory language. Hamilton v. Industrial Commission, 203 Ill. 2d 250, 255, 785 N.E.2d 839 (2003). Where the language of the statute is clear and unambiguous, we must apply it as written without reading into it exceptions, limitations, or conditions not expressed by the legislature. People ex rel. Madigan v. Kinzer, 232 Ill. 2d 179, 184-85, 902 N.E.2d 667 (2009).

Pursuant to the clear and unambiguous language of section 2-2201(a), Carlini had a duty to exercise ordinary care and skill in procuring *the coverage requested* by Melrose Park. The evidentiary material submitted in support of the motion for summary judgment established that neither Alport nor Taddeo ever requested that Carlini obtain workers' compensation insurance for Melrose Park. In addition, both Alport and Taddeo admitted that they did not inquire about workers' compensation insurance, and such coverage was not particularly discussed, either at the initial meeting at which the insurance for the store was addressed or thereafter. The duty imposed by section 2-2201 does not obligate an insurance

8

producer to procure a policy for the insured which had not been requested. 735 ILCS 5/2-2201(a) (West 2006). To hold Carlini responsible for insurance coverage beyond that requested by Melrose Park would extend the duty of ordinary care beyond that expressly defined by the legislature. Consequently, we conclude that Carlini did not have a duty to procure workers' compensation insurance for Melrose Park, nor was he obligated to offer advice regarding the need for such insurance where neither Alport nor Taddeo ever inquired as to that need.

In reaching this conclusion, we find that the cases cited by the plaintiff do not compel a different result. In particular, we note that Country Mutual Insurance Co. v. Carr, 366 Ill. App. 3d 758, 852 N.E.2d 907 (2006), on which the plaintiff places substantial reliance, has been vacated by the supreme court (In re Country Mutual Insurance Company, et al., ___ Ill. 2d ___, 889 N.E.2d 209 (2007)) and, therefore, carries no precedential weight. See Mohanty v. St. John Heart Clinic, 225 Ill. 2d 52, 66, 866 N.E.2d 85 (2006); Provena Health v. Illinois Health Facilities Planning Board, 382 Ill. App. 3d 34, 42, 886 N.E.2d 1054 (2008). In addition, the plaintiff's reliance on Golf v. Henderson, 376 Ill. App. 3d 271, 876 N.E.2d 105 (2007), is misplaced where the cited language did not relate to a claim brought under section 2-2201 of the Code but rather to a consumer fraud claim brought pursuant to section 2 of the Illinois Consumer Fraud and Deceptive

9

Business Practices Act (815 ILCS 505/2 (West 2004)). See Golf, 376 Ill. App. 3d at 276-77. The other cases relied upon by the plaintiff are not controlling here because they were decided or based upon circumstances occurring prior to the enactment of section 2-2201.

Melrose Park's argument, distilled to its essence, is that Carlini had a fiduciary duty to procure workers' compensation insurance despite the fact that no such coverage was requested by either Alport or Taddeo. This argument necessarily fails because section 2-2201(b) precludes claims against insurance producers for breach of fiduciary duty, except where such claims are based on the wrongful retention or misappropriation of any money that was received as premiums, as a premium deposit, or as payment of a claim. See 735 ILCS 5/2-2201(b) (West 2006); see also Moore ex rel. Moore v. Johnson County Farm Bureau, 343 Ill. App. 3d 581, 585-86, 798 N.E.2d 790 (2003).

We also find unpersuasive Melrose Park's assertion that, notwithstanding the terms of section 2-2201, a duty arose based on the long-standing course of dealing between Carlini and the Alports. In rejecting this claim, we observe that Melrose Park failed to provide any specific evidence regarding the nature and extent of the course of dealings between Carlini and Alport and her husband. To the contrary, Alport's testimony merely indicated that she and her husband had been doing business with Carlini for more

No. 1-09-0162

than 20 years, and Carlini obtained the insurance for Melpark Drugs and Liquors as well as for the family's other businesses and several commercial properties. No evidence was presented to indicate that, in the absence of a specific request, Carlini routinely procured workers' compensation insurance for the Alports' businesses. Evidence that Carlini acted as the Alports' insurance broker over a number of years, in and of itself, is insufficient to establish a course of dealing that would put an objectively reasonable insurance broker on notice that he was obligated to either procure workers' compensation insurance or to offer advice regarding the need for such insurance. In addition, Alport's own prior course of dealing with Carlini suggests the opposite conclusion. In her deposition, Alport testified that in approximately 2003 Carlini procured workers' compensation for her jewelry store because she had specifically requested it and made sure that such coverage had been obtained. Viewing the pleadings and evidentiary material in the light most favorable to Melrose Park, we conclude that the trial court properly entered summary judgment in favor of Carlini.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS and KARNEZIS, JJ., concur.

11