# Illinois Official Reports

## Appellate Court

*Office Furnishings, Ltd. v. A.F. Crissie & Co.*, 2015 IL App (1st) 141724

| | |
|---|---|
| Appellate Court Caption | OFFICE FURNISHINGS, LTD., Plaintiff-Appellant, v. A.F. CRISSIE AND COMPANY, LTD., and JAMES T. WERNER, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-14-1724 |
| Filed<br>Rehearing denied | November 9, 2015<br>December 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2008-L-12796; the Hon. Donald J. Suriano, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Offices of John F. Hedrich, of Chicago (Robert B. Patterson, of counsel), for appellant.<br><br>HeplerBroom LLC, of Chicago (Anthony J. Tunney and Robert E. Elworth, of counsel), for appellees. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Presiding Justice Liu and Justice Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Office Furnishings, Ltd., appeals the judgment of the circuit court granting defendants A.F. Crissie & Company, Ltd. (Crissie), and James T. Werner's motion for a judgment notwithstanding the verdict (judgment *n.o.v.*) on plaintiff's professional negligence claim.[1] On appeal, plaintiff contends that the trial court erred in entering the judgment *n.o.v.* because the evidence presented supports the finding that defendants owed a duty to procure replacement insurance for plaintiff, defendants breached that duty, and the breach proximately caused plaintiff's loss. For the following reasons, we affirm.

¶ 2                                              JURISDICTION

¶ 3    The trial court granted defendants' motion for judgment *n.o.v.* on May 9, 2014. Plaintiff filed its notice of appeal on June 5, 2014. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                              BACKGROUND

¶ 5    In 1993, plaintiff leased warehouse and office space in a building located at 725 South 25th Avenue in Bellwood, Illinois. Brathan Property, LLC (Brathan), purchased the property in 2000, and plaintiff continued to lease space from the building. Ray Meyers holds controlling ownership in both Brathan and plaintiff Office Furnishings, Ltd.

¶ 6    The building had two types of roofing. One section of roof was made of PVC membrane and the other was made of tar and gravel. The PVC roof had not been replaced since plaintiff leased the property in 1993. Meyers testified that after Brathan purchased the property, people would go on the roof regularly to see "what needed to be maintained." They would occasionally patch the PVC roof when checkups revealed water penetration. However, he stated that as far as he knew, the warehouse was dry up to 2003 and he could not "remember any time when someone came and told me the roof was leaking before the incident of 2003 on the PVC portion of the roof." His company did file an insurance claim in 2001 for a leaking problem with the tar and gravel roof.

¶ 7    When Brathan purchased the property, the building's roofing was inspected by a roofing contractor. Meyers stated that he did not call the roofing contractor nor did he recall whether he read any report prepared by the contractor. When presented with the documents, Meyers acknowledged that a contractor did inspect the roof. The report stated that the PVC membrane had shrunk and that "a substantial amount of water is trapped between the two layers of roofing." It recommended that the roof be replaced within one or two years. Defendants presented two more reports by other roofing contractors who inspected the PVC roof in February 2001 and June 2001. Both reports indicated that the contractors repaired leaks and the roof was in poor condition and needed to be replaced. Meyers denied that he had this information previously or was aware of the recommendations.

¶ 8    Jim Werner was the insurance producer for plaintiff, and he conducted his business through his agency, Crissie. Up to December 2002, plaintiff and Brathan were insured by a

---

[1]Brathan Property, LLC, also a plaintiff in the negligence claim, is not a party to this appeal.

policy from Meridian Insurance Company. Werner testified that he knew plaintiff made a property damage claim in 2001 for loss resulting from water damage. In August 2002, Meridian informed Werner that it would not be renewing coverage for plaintiff. Meridian did not renew plaintiff's policy because it had paid out more in claims than it received in premiums. Werner testified that he did not know the age of the building's roof.

¶ 9    As plaintiff's insurance producer, Werner sought replacement coverage from other insurance companies through the ACORD application. Werner testified that Meyers did not need to request replacement insurance, but it was "assumed" Werner would find replacement coverage as the insurance agent of plaintiff. To aid the application process, Werner asked plaintiff to provide updated information if applicable. He testified that sometimes the client returned the form with updates, and sometimes it did not. If no update was provided, Werner used the same information given on the prior application. He could not recall whether plaintiff returned the form with updated information.

¶ 10    Werner sent the ACORD application to eight insurance companies in October 2002. He stated that it was not the practice for clients to review the ACORD application before it was sent, and neither Meyers nor Meyers' assistant, Judith Johnson, reviewed the application. Werner also listed on the application that Brathan should be added as an additional insured in the policy. The application was silent on the age and condition of the roof. After reviewing the application, the companies declined to offer insurance to plaintiff due to past loss experience. Werner then contacted Joe Kobel, who was an agent for American Family Insurance (American Family) and with whom he had done some business in the past year. In November 2002, Kobel informed Werner that American Family would offer a policy to plaintiff. Werner met with Meyers and Johnson and presented them with American Family's proposal, which he recommended they accept. Meyers accepted based on Werner's recommendation.

¶ 11    Werner scheduled another meeting in December 2002 with Meyers, Johnson, and Kobel. He explained to Meyers that a subsequent meeting was needed because Kobel, as an authorized American Family agent, had "his own application that needed to be–that he would ask questions and that had to be signed." Werner was present at that meeting because "they did not know Joe Kobel. So it would have been–because I have done prior business with him, it was just customary that I would take him there, introduced him to Office Furnishings, explain that he was going to have to complete his application and that he's going to answer questions, and then Joe Kobel from that point on was in charge from there."

¶ 12    At the meeting, Kobel used the ACORD application to obtain some information he needed, and he asked more questions of Meyers and Johnson to complete the application. The American Family insurance application stated that the building's roof was five years old. This information was not listed on the ACORD application. The application listed no problems with the roof. Kobel testified that he was told by either Meyers or Johnson that the roof was five years old. However, Meyers and Johnson testified that they were not asked to provide information about the age or condition of the roof, and they did not provide such information to Kobel. Meyers acknowledged that he never communicated to Werner the age of the roof because he did not have that information. Kobel did not inform Meyers or Johnson of the importance of accurately listing the age of the roof on the application. Werner testified that although he was present during the meeting, he did not review any of the documents that were signed and he did not ask questions.

¶ 13    Meyers testified that he was not present for the entire meeting and was called in to sign two sections. When asked whether he recalled answering any questions about the application, Meyers responded, "we were never asked any questions about [the] American Family application process." He stated that Johnson would have handled any appointments and discussions related to the application process. Meyers acknowledged that Kobel was in charge of the meeting and stated that Werner did not ask any questions during the meeting. The application omitted Brathan as an additional insured. Werner, however, discovered the omission and told Meyers that he was working on the issue with Kobel. The policy provided insurance coverage to plaintiff from December 1, 2002, to December 1, 2003.

¶ 14    Meyers testified that on January 31, 2003, he was in his office when his purchasing agent informed him that an employee from the warehouse reported a leak in the roof. Meyers stated that he did not think "anything of it because we've had no problems with leaking in the warehouse. So I thought it was real minor." Around noon, the purchasing agent approached Meyers again and told him that "guys in the warehouse say the roof is really leaking." He went to look at the roof and saw that it "was in total chaos." When Meyers went to the warehouse he saw that "[i]t was raining like a rain forest" inside. He and his employees protected as much of the merchandise as they could, but the company sustained more than $1 million in damages.

¶ 15    Plaintiff submitted a claim to American Family. In investigating the claim, American Family discovered that plaintiff misrepresented the age and condition of the roof on their application. American Family denied the claim because "the alleged occurrence was not a fortuitous event." It also pointed out other misrepresentations, including that plaintiff never made a claim for damages caused by wind to the roof, and that no contractors had ever examined the roof's condition. Plaintiff and Brathan filed this professional negligence claim against defendants, alleging damages of $1,349,872 for damage to the building, $759,259 for damage to business personal property, and $88,074 for expenses related to installing a temporary roof.

¶ 16    During the trial, plaintiff's expert Stephen Nechtow testified that the standard practice for an insurance producer required Werner to review the American Family application "to be sure that the information that was put into the American Family application was true and accurate" and "all the facts were there." Defendants' expert, Todd Davis, testified it was not standard practice for Werner to review or explain the application to plaintiff or the consequences of providing incorrect answers on the application. Werner properly discharged his duty to plaintiff by obtaining replacement insurance for plaintiff through Kobel and American Family.

¶ 17    Three issues of negligence were presented to the jury: (1) Werner failed to ensure that plaintiff understood the questions on the American Family application; (2) Werner failed to ensure that plaintiff understood that coverage could be denied if the answers on the application are not correct; and (3) Werner failed to ensure that the information on the application filled out accurately reflected the information provided. The jury found in favor of Office Furnishings for $467,721.50, but found against Brathan.

¶ 18    Defendants filed a motion for a judgment *n.o.v.* or, in the alternative, for a new trial, arguing that the verdict reflected an improper imposition of a duty upon Werner, and the manifest weight of the evidence warranted a new trial. The trial court granted the judgment *n.o.v.*, finding that Werner had no duty "to verify the information on the application" or to review the application with Meyers. Werner "could do nothing with that application" because Kobel was the exclusive agent for American Family. Werner's duty was only to procure the

insurance request of plaintiff, and since "[h]e did provide the coverage and everything that he was looking for," Werner fulfilled his duty. Plaintiff filed this timely appeal.

¶ 19                                                            ANALYSIS

¶ 20    Plaintiff contends that the trial court erred in granting judgment *n.o.v.* in favor of defendants. The trial court properly enters a judgment *n.o.v.* in limited cases where all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). A judgment *n.o.v.* is not appropriate if any evidence, together with reasonable inferences drawn therefrom, demonstrate a substantial factual dispute, "or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Id*. at 454. We review the trial court's ruling on a motion for a judgment *n.o.v.* under the *de novo* standard. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006).

¶ 21    Generally, to state a cause of action for negligence, plaintiff must show that defendant owed plaintiff a duty, defendant breached that duty, and defendant's breach was the proximate cause of plaintiff's injury. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2001). "In the context of an insurance broker procuring insurance on behalf of the plaintiff, 'the primary function of an insurance broker as it relates to an insured is to faithfully negotiate and procure an insurance policy according to the wishes and requirements of his client.' " *Industrial Enclosure Corp. v. Glenview Insurance Agency, Inc.*, 379 Ill. App. 3d 434, 439-40 (2008) (quoting *Pittway Corp. v. American Motorists Insurance Co.*, 56 Ill. App. 3d 338, 346-47 (1977)).

¶ 22    This common law duty of a broker is codified in section 2-2201(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201(a) (West 2010)), which requires an insurance producer to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." Under this section, the duty to exercise ordinary care arises only after coverage is " 'requested by the insured or proposed insured.' " *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 37 (quoting 735 ILCS 5/2-2201(a) (West 2010)). Once such coverage is requested, insurance producers "exercise ordinary care and skill in responding to the request, 'either by providing the desirable coverage or by notifying the applicant of the rejection of the risk.' " *Id*. (quoting *Talbot v. Country Life Insurance Co*., 8 Ill. App. 3d 1062, 1065 (1973)).

¶ 23    Our supreme court in *Skaperdas* agreed with this court's determination in *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915 (2010), that such a duty "may not be imposed *** based on a vague request to make sure the insured is covered." *Skaperdas*, 2015 IL 117021, ¶ 42. In *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915 (2010), the plaintiff did not specifically request workers' compensation insurance and the policy procured by the defendant insurance producer provided business liability coverage but not coverage for workers' compensation claims. After one of the plaintiff's employees was injured on the job, plaintiff filed a negligence claim against defendant alleging that defendant failed to obtain or offer to obtain workers' compensation insurance and failed to advise plaintiff that such insurance was required by law. *Id*. at 918. This court affirmed the trial court's grant of summary judgment in favor of defendant, holding that an insurance producer had no duty to obtain workers' compensation insurance not requested, nor was he obligated to advise the

insured regarding the need for such insurance. *Id*. at 920. "To hold [the insurance producer] responsible for insurance coverage beyond that requested by [the insured] would extend the duty of ordinary care beyond that expressly defined by the legislature." *Id*.

¶ 24 Here, plaintiff contends that in finding that Werner had no duty to verify the information on the American Family insurance application, or to review the application with plaintiff, and granting the motion for judgment *n.o.v.*, the trial court confused duty with evidence of conduct proving breach of a duty. Plaintiff argues that Werner's conduct in undertaking to find defendants a replacement policy, obtaining American Family as the carrier, arranging the application meeting, being present at the meeting, and offering to correct errors in the issued policy, subjected Werner to liability if the requested insurance becomes void due to his negligence. Plaintiff contends that whether such conduct indicates a breach of duty is a question of fact for the jury and, given the conflicting expert opinions given in the case, judgment *n.o.v.* was not appropriate.

¶ 25 Plaintiff, however, is essentially arguing that by engaging in the aforementioned conduct, Werner created a duty, beyond the exercise of ordinary care outlined in *Skaperdas*, to verify the accuracy of the information on the insurance application and to review the application with defendants. Our supreme court made clear in *Skaperdas* that section 2-2201(a) of the Code imposes on an insurance producer only a duty to exercise ordinary care in renewing, procuring, binding, or placing the coverage specifically requested by the insured. *Skaperdas*, 2015 IL 117021, ¶ 37. In order to find a duty to provide specific coverage, the insured must make a request for that specific coverage; a general request to make sure the insured is covered is insufficient to create such a duty. *Id*. Insurance producers exercise ordinary care and skill in responding to a request for coverage, either by providing the desirable coverage or by notifying the applicant of the rejection of the risk. *Id*.

¶ 26 The evidence shows that Meyers did not make a specific request for coverage, only that it was assumed Werner would find replacement insurance for plaintiff. Werner, as the insurance producer, found an insurer, American Family, to provide a replacement policy as requested. Through Kobel, American Family's agent, plaintiff was issued a replacement policy. This evidence is undisputed. According to *Skaperdas*, defendants fulfilled their duty owed to plaintiff. To require Werner to review the American Family application with Meyers and Johnson for accuracy, and advise them on the necessity of providing accurate information, would extend the section 2-2201 duty "beyond that expressly defined by the legislature." *Carlini*, 399 Ill. App. 3d at 920. Furthermore, imposing such a duty on Werner makes no sense here, where the evidence showed that Werner did not know the age of the roof and could not have known whether Meyers or Johnson answered that question accurately. "Where no duty is owed, there is no negligence, and the plaintiff is precluded from recovery as a matter of law." *Id*. at 919. Since the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors defendants that no contrary verdict based on the evidence could ever stand, judgment *n.o.v.* was proper. *Maple*, 151 Ill. 2d at 453.

¶ 27 In light of our disposition of the case, we need not address defendants' alternate request for a new trial.

¶ 28 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 29 Affirmed.