2022 IL App (1st) 211227-U
Order filed: July 7, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1227

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL SCHODROF and STEPHANIE SCHODROF, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2019 L 14156 |
| CC SERVICES, INC., d/b/a Country Financial, and MIKE P. THAUER, d/b/a Mike P. Thauer Insurance Agency, | ) ) ) | Honorable Michael F. Otto, |
| Defendants-Appellees. | ) ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiffs filed a complaint alleging that defendants negligently failed to procure homeowner's insurance covering water damage to their property. The circuit court granted summary judgment for defendants. We affirmed, holding that defendants had no duty to procure insurance covering water damage to plaintiffs' property in the absence of a specific request for such coverage.

¶ 2    Plaintiffs, Michael and Stephanie Schodrof, purchased a home that they intended to leave vacant for several months while they had it remodeled. Michael P. Thauer, an agent and broker for CC Services, Inc., doing business as Country Financial, procured a homeowner's policy for plaintiffs with American Modern Property and Casualty Insurance Company (American Modern). The policy was American Modern form DP-1, which insures properties that are expected to remain

vacant for more than 30 days. Form DP-1 provides coverage for certain specified perils such as fire and windstorm, but it does not include coverage for water damage to the property. After plaintiffs' home suffered extensive water damage, they made a claim under the policy with American Modern, which denied coverage. Plaintiffs then brought a three-count amended complaint against American Modern, Thauer, and Country Financial. Count I alleged breach of contract against American Modern. Count II alleged negligent failure by Thauer and Country Financial (collectively defendants) to procure adequate homeowner's insurance covering the water damage to their home. Count III alleged that defendants breached their fiduciary duty to plaintiffs to provide them with a homeowner's policy covering the water damage to their home. The circuit court granted summary judgment for American Modern on count I, and it granted summary judgment for defendants on counts II and III. Plaintiffs appeal only the grant of summary judgment for defendants on count II. We affirm.

¶ 3     Plaintiffs filed their amended complaint on December 18, 2020, alleging that they purchased a home at 125 Sunset Avenue in LaGrange (Sunset Avenue property), which they intended to leave vacant for several months while they had it remodeled. Plaintiffs asked Thauer "to procure adequate insurance coverage for the home while it remained vacant and while [they] considered certain remodeling options." Plaintiffs "indicated" to Thauer that "they desired to procure coverage that would cover all potential losses in a situation like the one they were facing with their new home standing vacant for several months, being remodeled *** during the cold winter months."

¶ 4     Thauer procured an American Modern homeowner's policy, form DP-1, for plaintiffs that provided coverage to the vacant property for certain specified perils but did not cover water damage. Thauer informed plaintiffs that the policy "adequately covered all of the potential losses

[plaintiffs] had expressed concern about." Thauer did not provide plaintiffs with a copy of the insurance policy at the time it was issued.

¶ 5    Subsequently, on January 4, 2018, the Sunset Avenue property "suffered a catastrophic loss as a result of significant water infiltration into the property from unknown causes." Plaintiffs brought a claim for coverage under their insurance policy with American Modern. On January 12, 2018, American Modern sent plaintiffs a letter denying coverage.

¶ 6    In count II of their amended complaint, plaintiffs alleged that Thauer, as an agent of Country Financial, failed to exercise ordinary care and skill when procuring a homeowner's policy for them that did not cover the water damage to the Sunset Avenue property. Defendants thereby violated section 2-2201(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201(a) (West 2020)), which requires an insurance producer to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."

¶ 7    During the course of discovery, defendants submitted Thauer's written "Declaration" certified under section 1-109 of the Code (735 ILCS 5/1-109 (West 2020))[1] stating that he is an agent of the Country group of insurance companies (Country). Under his contract, Thauer only can sell insurance products provided by Country unless the insured seeks insurance for a type of risk that Country does not insure. In that situation, Thauer can offer insurance from another

---

[1] Section 1-109 provides that a document verified by certification must state in substantially the following form: "Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." *Id.* Section 1-109 states that any such certified document "may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath, and there is no further requirement that the *** document be sworn before an authorized person." *Id.*

insurance company for which Country's brokerage unit, CC Services, has a brokerage arrangement.

¶ 8    Country does not insure residential properties that are known to be vacant except for seasonal homes or residential homes expected to be occupied within 30 days by a new purchaser. American Modern offers insurance for residential properties that are expected to remain vacant for more than 30 days. CC Services has a brokerage relationship with American Modern that enables Thauer to procure insurance for customers who seek coverage for residential properties that will remain vacant for more than 30 days.

¶ 9    Thauer stated in his Declaration that in 2015, Michael Schodrof purchased three vacant houses, one on Badger Lane in Homer Glen, one on Kolmar Avenue in Oak Lawn, and one in Plainfield. In March 2016, Schodrof purchased a vacant house located at 448 S. Madison Avenue in LaGrange. Schodrof requested that Thauer procure insurance for all four of those vacant properties. In response, Thauer provided an American Modern form DP-1 insurance policy for each of the properties. Schodrof never informed Thauer that the terms of any of those insurance policies failed to conform to the insurance he had requested.

¶ 10    On November 30, 2017, Schodrof called Thauer and told him that he and his wife Stephanie (collectively, plaintiffs) had sold their house and purchased the Sunset Avenue property, which they planned to renovate before moving into it as their permanent residence. Schodrof provided a brief description of the Sunset Avenue property and its purchase price and told Thauer that while it was being renovated, plaintiffs would be leasing a house at 341 S. Catherine Avenue in LaGrange for six months.

¶ 11    Thauer stated in his Declaration that during the phone conversation, Schodrof asked him to procure insurance for the Sunset Avenue property; however, Schodrof did not ask him to

"procure any *specific* type of insurance coverage." (Emphasis added.) Schodrof did not ask Thauer to procure any insurance coverage different than the coverage procured for the Plainfield, Homer Glen, Oak Lawn, and LaGrange properties, nor did he ask Thauer to "procure coverage for frozen or burst water pipes or for any type of water damage" for the Sunset Avenue property.

¶ 12    Thauer procured a policy from American Modern for the Sunset Avenue property. The policy was form DP-1, the same as those procured for the Plainfield, Homer Glen, Oak Lawn, and LaGrange properties.

¶ 13    Schodrof testified in his discovery deposition that he has purchased multiple vacant residential houses to "flip." A flip property is bought with "the intention of putting some sweat equity into it and turning it around and putting it back on the market for a higher price than you bought it for." Schodrof has obtained insurance for all of his flip properties from Thauer.

¶ 14    Schodrof identified the Plainfield, Homer Glen, and Oak Lawn properties as flip properties he purchased for which Thauer procured insurance through American Modern form DP-1. Schodrof identified the LaGrange property as a rental/investment property he purchased for which Thauer also procured insurance through American Modern form DP-1. Schodrof admitted he made no objections to any of the American Modern form DP-1 insurance policies procured by Thauer for his Plainfield, Homer Glen, Oak Lawn, and LaGrange properties and in fact he renewed those policies.

¶ 15    In December 2017, plaintiffs purchased the Sunset Avenue property that they planned to renovate before moving into it as their permanent residence. During the renovation period, plaintiffs intended for the Sunset Avenue property to remain vacant for up to six months while they stayed in a rental property.

¶ 16    During a phone conversation lasting less than five minutes, Schodrof asked Thauer to procure insurance for the Sunset Avenue property. Schodrof testified:

"Q. When you spoke with Mike Thauer about insurance for [the Sunset Avenue property], what information did you provide him about the property?

A. I would have told him that this is not an investment property, that we're going to live in this home.

Q. Did you tell him when you would move into the home?

A. I wasn't certain about that. So, no, I didn't.

Q. Did you tell Mike Thauer that the [Sunset Avenue property] would be vacant for some period of time?

A. Yeah. I *** let him know that there would be some amount of work being done, but, again, I'm not sure how extensive the work would be.

* * *

Q. Did you ask Mr. Thauer to procure any particular types of coverage for the property?

A. I don't recall.

Q. In the course of your discussion with Mr. Thauer, was there any reference made to the insurance policies that *** he had procured for you from American Modern for the investment properties?

A. No.

Q. Did you tell Mr. Thauer that you wanted coverage for [the Sunset Avenue property] that would be different from the coverage you had for the investment properties?

***

A. I don't recall."

¶ 17    Schodrof later submitted a written "Declaration" certified under section 1-109 of the Code stating that in 2015, plaintiffs purchased the Plainfield home for the purpose of flipping it. Schodrof called Thauer, informed him that they had purchased the Plainfield home to flip it, and asked him to procure "an inexpensive policy to provide minimal coverage while the property was being renovated. He procured a policy appropriate for those circumstances." Schodrof "went through that process" with Thauer for additional properties in Homer Glen, Oak Lawn, and LaGrange that plaintiffs intended on flipping. Thauer procured policies for the Homer Glen, Oak Lawn, and LaGrange properties similar to the policy for the Plainfield property.

¶ 18    Schodrof further stated in his Declaration:

"In November 2017, I called Mr. Thauer to advise him that my wife and I had purchase[d] [the Sunset Avenue property]. I explained to Mr. Thauer that we were not flipping this house; that we intended to move into the house and live there indefinitely as our family home.

I perceived on the call that Mr. Thauer presumed [the Sunset Avenue property] was another house we intended to flip. I, therefore, explicitly told him that we were not going to flip this house and needed an insurance policy appropriate for our permanent home, rather than a policy appropriate for a short-term flipping project. Such a policy naturally would have included coverage for water damage."

¶ 19    Thauer subsequently informed Schodrof that he had procured "adequate coverage" for the Sunset Avenue property. Plaintiffs did not receive a copy of the form DP-1 policy procured by Schodrof until after receiving American Modern's January 12, 2018, letter denying coverage for the water damage.

¶ 20    Following the denial of coverage, plaintiffs filed a three-count complaint, only count II of which is the subject of this appeal. Count II was a negligence claim alleging that defendants violated section 2-2201(a) of the Code by failing to exercise ordinary care and skill when procuring a homeowner's policy for them that did not cover the water damage to the Sunset Avenue property. The circuit court granted summary judgment in favor of defendants. Plaintiffs appeal.

¶ 21    To recover on a claim of negligence, plaintiffs must show a duty owed to them by defendants, a breach of that duty, and an injury proximately caused by the breach. *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915, 919 (2010). The determination of whether defendants owed plaintiffs a duty of care is a question of law to be determined by the court. *Id.* Where no duty is owed, there is no negligence, and plaintiffs are precluded from recovery as a matter of law. *Id.*

¶ 22    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See 735 ILCS 5/2-1005(c) (West 2020). In ruling on a motion for summary judgment, the pleadings and evidence must be strictly construed against the movant and liberally in favor of the opponent. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. Review is *de novo*. *Id.*

¶ 23    Initially, we note that during the summary judgment proceedings, Schodrof and Thauer each submitted a Declaration certified under section 1-109 of the Code, not a sworn affidavit. This court has held that the better procedure for summary judgment proceedings is to submit a sworn affidavit, not a Declaration. See *People ex rel. Illinois Department of Labor v. General Electric Co.*, 347 Ill. App. 3d 72, 74 n. 1 (2004). However, where, as here, neither party objects to the use of a Declaration in lieu of an affidavit, the issue is forfeited and the Declaration may be considered

both by the circuit court and the reviewing court. *Id.* Accordingly, we consider the Declarations submitted by Schodrof and Thauer when deciding plaintiffs' appeal from the circuit court's summary judgment order.

¶ 24    On appeal, plaintiffs argue that the circuit court erred in granting defendants' motion for summary judgment on the basis that they had no duty under section 2-2201(a) of the Code to obtain coverage for the water damage to the vacant Sunset Avenue property. *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915 (2010) and *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021 are instructive.

¶ 25    In *Carlini*, 399 Ill. App. 3d at 917, the owner and the manager of a liquor store asked a licensed insurance producer to obtain insurance for the store. The owner testified during her deposition that she asked the insurance producer to "make sure that all of the requirements for insurance [were] taken out, including the building, *** the liquor, any type of liability policy." *Id.* The owner admitted she did not specifically request workers' compensation insurance or ask whether such insurance was needed. *Id.* The manager testified that he only asked whether the insurance producer was going to "take care of the insurance"; the issue of workers' compensation insurance was not specifically addressed. *Id.* at 918.

¶ 26    The insurance producer obtained coverage for "liquor liability" and other forms of coverage for the business and its premises, but did not include workers' compensation insurance coverage. *Id.* at 917. Subsequently, a store employee was injured while working at the store. *Id.* The corporate owner of the store filed suit against the insurance producer, alleging he negligently failed to procure workers' compensation insurance and failed to advise that such insurance was required by law. *Id.* at 918. In affirming the circuit court's grant of summary judgment for the insurance producer, we held that he had no duty under section 2-2201(a) to obtain workers'

compensation insurance that was not requested, nor was he obligated to advise the insured regarding the need for such insurance. *Id.* at 920. "To hold [the insurance producer] responsible for insurance coverage beyond that requested by [the insured] would extend the duty of ordinary care beyond that expressly defined by the legislature." *Id.*

¶ 27    In *Skaperdas*, 2015 IL 117021, ¶¶ 3-4, the insured met with the insurance company's agent and requested that his fiancée be added to his automobile insurance policy. The agent prepared the policy but failed to add the fiancée as requested. *Id.* ¶ 4. The fiancée subsequently made a claim under the policy that the insurance company denied because she was not a named insured. *Id.* ¶ 5. The plaintiffs filed a complaint alleging that the agent was negligent for failing to procure the requested coverage naming the fiancée as an insured. *Id.* ¶ 6. The circuit court dismissed the plaintiffs' complaint, finding that the agent owed them no duty of care in procuring the requested insurance coverage. *Id.* ¶¶ 7-8. The appellate court reversed and remanded, holding that as an insurance producer, the agent owed the plaintiffs a duty of care under section 2-2201(a) in procuring the requested coverage. *Id.* ¶ 9.

¶ 28    On appeal to our supreme court, the primary issue was whether a "captive insurance agent," *i.e.*, an agent who is contractually bound to sell only his company's insurance, is an "insurance producer" subject to section 2-2201(a)'s requirement that insurance producers exercise "ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured." 735 ILCS 5/2-2201(a) (West 2020). The agent argued that section 2-2201(a) only applies to insurance brokers, *i.e.*, to the individuals who procure insurance and act as middlemen between the insured and the insurer. *Skaperdas*, 2015 IL 117021, ¶ 12. The supreme court found that insurance agents as well as insurance brokers are insurance "producers" subject to the duty of ordinary care imposed under section 2-2201(a). *Id.* ¶¶ 17-37. The agent argued that if such a duty

of ordinary care is imposed on him, he could be held liable for failing to place coverage with a different company if it would better suit the customer's needs. *Id.* ¶ 38. The supreme court found that such concerns were misplaced because "[s]ection 2-2201 does not require an agent to obtain the best possible coverage for a customer, but only requires the agent to exercise ordinary care and skill in obtaining the coverage requested by the insured or proposed insured." *Id.* ¶ 39.

¶ 29 The supreme court then addressed the scope of section 2-2201(a) and whether it imposes a duty on an insurance producer to procure a specific type of coverage even when the insured has only made a vague or general request for "coverage." *Id.* ¶ 40. The supreme court discussed *Carlini* and agreed with its determination that section 2-2201(a) "only imposes a duty of ordinary care after a specific request is made. Thus, *** a duty may not be imposed under section 2-2201(a) based on a vague request to make sure the insured is covered." *Id.* ¶ 42.

¶ 30 The supreme court found that the plaintiffs' complaint adequately alleged that the agent failed to exercise ordinary care in procuring the insurance coverage that was specifically requested and it affirmed the appellate court's judgment reversing the dismissal order and remanding for further proceedings. *Id.* ¶ 44, ¶ 48.

¶ 31 Pursuant to *Carlini* and *Skaperdas*, defendants here had a duty under section 2-2201(a) to provide only the level of coverage for the Sunset Avenue property actually requested by plaintiffs. The only request made by Schodrof was that Thauer should procure an "appropriate" and "adequate" insurance policy covering "all potential losses" for the permanent home on Sunset Avenue that was to remain vacant for several months while it was renovated. In his Declaration, Schodrof indicated his belief that "[s]uch a policy naturally would have included coverage for water damage," but he never stated that he actually told Thauer to procure coverage for water

damage nor did he make a request for any specific type of coverage different than the coverage provided for his other vacant properties under American Modern form DP-1.

¶ 32    Schodrof's request for "appropriate" and "adequate" coverage for "all potential losses," in the absence of a discussion or meeting of the minds regarding the meaning thereof, is the type of vague request that *Skaperdas* and *Carlini* held was insufficient to support a claim against an insurance producer under section 2-2201(a). See *Skaperdas*, 2015 IL 117021, ¶ 42 ("a duty may not be imposed under section 2-2201(a) based on a vague request to make sure the insured is covered"); *Carlini*, 399 Ill. App. 3d at 918 (the insured's request that he be "covered on everything" did not impose a duty on the insurance producer to procure workers' compensation insurance that was not specifically requested).

¶ 33    Despite the vagueness of the request, Thauer procured a form DP-1 policy for the Sunset Avenue property through American Modern. Thauer explained in his Declaration that as the Sunset Avenue property was intended to stand vacant for several months, he could not offer coverage through Country, which only insures vacant homes expected to be occupied within 30 days by a new purchaser. Thauer only could provide coverage for a home expected to remain vacant for several months through American Modern. Based on their prior course of dealing, Thauer procured an American Modern form DP-1 policy for the vacant Sunset Avenue property similar to the policies he previously had procured for Schodrof's vacant Plainfield, Homer Glen, Oak Lawn, and LaGrange properties, all of which excluded coverage for water damage and were never objected to by Schodrof. See *Pickett v. First American Savings and Loan Association*, 90 Ill. App. 3d 245, 252 (1980) (holding that "the elements of the contract to procure insurance may be implied from past dealings between the parties"). Thauer thereby satisfied his duty under section 2-2201(a) to exercise ordinary care and skill in procuring the coverage requested by Schodrof for the vacant

Sunset Avenue property; section 2-2201(a) imposed no additional duty on him to procure extra coverage for water damage that had not been specifically requested.

¶ 34    Plaintiffs now argue that Thauer had a duty to provide not merely the coverage requested (*i.e.*, the American Modern form DP-1 for properties standing vacant longer than 30 days) but he also had a duty to discern that Schodrof actually was thinking that he wanted additional coverage for water damage. However, *Carlini* and *Skaperdas* make clear that the insurance producer's duty is to provide the coverage actually requested, not to anticipate what other coverage might potentially be needed or to read the insured's mind and provide coverage other than what was requested.

¶ 35    As Thauer owed Schodrof no duty to procure insurance coverage for water damage to the vacant Sunset Avenue property that was never specifically requested, plaintiffs' negligence claim necessarily fails and the circuit court properly entered summary judgment for defendants on count II of the amended complaint.

¶ 36    For all the foregoing reasons, we affirm the judgment of the circuit court. As a result of our disposition of this case, we need not address the other argument on appeal.

¶ 37    Affirmed.