# Illinois Official Reports

## Supreme Court

### *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021

| | |
|---|---|
| Caption in Supreme Court: | STEVEN A. SKAPERDAS *et al.*, Appellees, v. COUNTRY CASUALTY INSURANCE COMPANY *et al.*, Appellants. |
| Docket No. | 117021 |
| Filed | March 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Jeffrey B. Ford, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Laura A. Petersen and Sadiq M. Shariff, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, and Stanley E. Freeman, of Champaign, for appellants. |
| | Aaron D. Lauter, of Frederick & Hagle, of Urbana, for appellees. |
| | Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, for *amicus curiae* Illinois Insurance Association. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1     In this case, we consider whether an insurance company's agent has a duty to exercise ordinary care and skill in procuring the specific insurance coverage requested by his customer. The appellate court held section 2-2201 of the Code of Civil Procedure (Code) (735 ILCS 5/2-2201 (West 2010)), imposes a duty on an insurance agent to act with ordinary care under the circumstances presented in this case. For the following reasons, we affirm the appellate court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3     In 2006, Country Casualty Insurance Company, through its agent Tom Lessaris, issued an automobile insurance policy to Steven A. Skaperdas. Skaperdas's fiancée, Valerie R. Day, was subsequently involved in an accident while driving one of his vehicles. Country Casualty covered the loss but required Skaperdas to change his policy to include Day as an additional driver.

¶ 4     Skaperdas met with Lessaris to request coverage for Day under the insurance policy. Lessaris prepared the policy, but identified only Skaperdas as a named insured. Day was not included as a named insured under the policy. The declarations page for the policy, however, identified the driver as a "female, 30-64."

¶ 5     Following issuance of the policy, Day's minor son, Jonathon Jackson, was struck by a vehicle while riding his bicycle and seriously injured. The driver's automobile insurance policy limit of $25,000 was insufficient to cover Jackson's medical expenses. Plaintiffs, therefore, made a demand for underinsured motorist coverage under the Country Casualty policy. Country Casualty denied the claim on the ground that neither Day nor Jackson was listed as a named insured on the policy.

¶ 6     Skaperdas and Day, on behalf of herself and as representative of Jackson, filed a complaint alleging in count I that Lessaris was negligent in failing to procure the insurance coverage requested by Skaperdas. Plaintiffs alleged Lessaris breached his duty to exercise ordinary care and skill in renewing, procuring, binding, and placing the requested insurance coverage as required by section 2-2201 of the Code (735 ILCS 5/2-2201 (West 2010)). In count II, plaintiffs alleged Country Casualty was responsible for the acts or omissions of its agent under the doctrine of *respondeat superior*. In count III, plaintiffs alleged a claim for reformation of contract to include Day as an additional named insured, and in count IV they sought a declaration of insurance coverage.

¶ 7     Lessaris moved to dismiss the negligence claim under section 2-619 of the Code. 735 ILCS 5/2-619 (West 2010). Lessaris claimed he did not owe plaintiffs a duty of care in procuring the requested insurance coverage. Country Casualty also filed a section 2-619 motion to dismiss the claim based on *respondeat superior*, asserting that it was not liable for the alleged negligence of Lessaris because he did not owe plaintiffs a duty.

¶ 8     The circuit court of Champaign County granted the motions to dismiss counts I and II of the complaint. The trial court also found no just reason for delaying appeal of the dismissal of those counts. Accordingly, the trial court allowed Lessaris's and plaintiffs' motions for a Supreme Court Rule 304(a) finding. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 9    The appellate court held that a plain reading of section 2-2201 together with the definition of "insurance producer" in section 500-10 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/500-10 (West 2010)), established that "any person required to be licensed to sell, solicit, or negotiate insurance has a duty to exercise ordinary care in procuring insurance." 2013 IL App (4th) 120986, ¶ 23. Accordingly, the appellate court concluded that as an insurance producer, Lessaris owed plaintiffs a duty of care in procuring insurance coverage for them. The appellate court, therefore, reversed the trial court's dismissal of counts I and II of plaintiffs' complaint and remanded for further proceedings. 2013 IL App (4th) 120986, ¶¶ 23, 24.

¶ 10   We allowed Lessaris's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We also allowed the Illinois Insurance Association to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 11                                    II. ANALYSIS

¶ 12   On appeal to this court, Lessaris contends that section 2-2201 does not impose a duty of ordinary care on a "captive insurance agent" to procure a specific type or amount of coverage for a client. A captive agent of an insurance company owes a duty to the company, not to the insured. Lessaris argues that only insurance brokers owe a fiduciary duty to an insured by virtue of being employed by the insured, and section 2-2201 is intended to limit the liability of insurance brokers in a fiduciary relationship. Thus, according to Lessaris, the statute applies only to insurance brokers. Lessaris contends the statute is not intended to create a new duty for captive agents to insureds. Accordingly, as a captive agent of Country Casualty, he owed no duty to plaintiffs.

¶ 13   Country Casualty adopts Lessaris's argument that he did not owe a duty to plaintiffs. Country Casualty maintains that it cannot be held liable to plaintiffs for the alleged negligence of its agent when its agent did not owe a duty to plaintiffs.

¶ 14   Plaintiffs' amended complaint was dismissed under section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter defeating the plaintiff's claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. The circuit court's dismissal of a complaint under section 2-619 is reviewed *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 15   The issue of whether section 2-2201 imposes a duty of ordinary care in these circumstances presents a question of statutory construction. The construction of a statute is also reviewed *de novo*. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22. When construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. Undefined terms in the statute must be given their ordinary and popularly understood meaning. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. In interpreting a statute, no part should be rendered meaningless or superfluous. *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 25. Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express. *In re N.C.*, 2014 IL 116532, ¶ 50.

¶ 16      If the language of a statute is clear and unambiguous, it should be applied as written without resort to extrinsic aids of construction. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47. When statutory language is ambiguous, however, courts may consider extrinsic aids of construction to discern the legislature's intent. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 13. A statute is ambiguous if it is subject to more than one reasonable interpretation. *Nowak*, 2011 IL 111838, ¶ 11.

¶ 17      Section 2-2201 of the Code provides, in pertinent part:

"Ordinary care; civil liability.

(a) An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured.

(b) No cause of action brought by any person or entity against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as payment of a claim.

***

(d) While limiting the scope of liability of an insurance producer, registered firm, or limited insurance representative under standards governing the conduct of a fiduciary or a fiduciary relationship, the provisions of this Section do not limit or release an insurance producer, registered firm, or limited insurance representative from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance." 735 ILCS 5/2-2201(a), (b), (d) (West 2010).

¶ 18      This case turns on whether Lessaris, as an agent of Country Casualty, is an "insurance producer" within the meaning of section 2-2201. The term "insurance producer" is not defined in section 2-2201, and this court has not previously construed that term. While this court has held it is appropriate to refer to a dictionary to ascertain the meaning of otherwise undefined words or phrases (*Lacey v. Village of Palatine*, 232 Ill. 2d 349, 363 (2009)), the parties have not identified, and we have not found, a dictionary definition of the term "insurance producer."

¶ 19      This court has observed that insurance law distinguishes between an agent and a broker, stating:

" 'A broker is an individual who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself. [Citation.] An agent is an individual who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies.' " *Zannini v. Reliance*

- 4 -

*Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 451 (1992) (quoting *Krause v. Pekin Life Insurance Co.*, 194 Ill. App. 3d 798, 804-05 (1990)).

We have not, however, addressed whether insurance agents or brokers, or both, may be classified as "insurance producers."

¶ 20    We note that Black's Law Dictionary includes the term "producer" in the definition of both an "insurance agent" and an "insurance broker." "Insurance agent" is defined as "[a] person authorized by an insurance company to sell its insurance policies. — Also termed *producer*; (in property insurance) *recording agent*; *record agent*." Black's Law Dictionary 876 (9th ed. 2009). "Insurance broker" is defined as "[a] person who, for compensation, brings about or negotiates contracts of insurance as an agent for someone else, but not as an officer, salaried employee, or licensed agent of an insurance company. The broker acts as an intermediary between the insured and the insurer. — Also termed *producer*." Black's Law Dictionary 220 (9th ed. 2009). Thus, according to Black's Law Dictionary, both an insurance agent and an insurance broker may be classified as a "producer."

¶ 21    Defendants argue, however, that Illinois common law has defined "insurance producer" as an "insurance broker." Defendants cite *United General Title Insurance Co. v. AmeriTitle, Inc.*, 365 Ill. App. 3d 142, 152 (2006), *overruled on other grounds by Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461 (2008), for the statement that "[i]n Illinois, 'insurance producer' is used synonymously with the term 'insurance broker.' " *United General* did not, however, construe the term "insurance producer" within the context of section 2-2201. Additionally, *United General* did not state that the definition of "insurance producer" is limited to insurance brokers and excludes insurance agents. While our appellate court has used the terms "broker" and "producer" interchangeably and has held section 2-2201 imposes a statutory duty on insurance brokers (see *Garrick v. Mesirow Financial Holdings, Inc.*, 2013 IL App (1st) 122228, ¶¶ 31, 35), we have not found any express holding that insurance agents cannot also be included within the term "insurance producer."

¶ 22    Defendants also argue that subsections (b) and (d) of section 2-2201 will be rendered meaningless if captive agents are included within the definition of "insurance producer." Defendants contend that subsections (b) and (d) indicate the statute's purpose is to limit the liability of insurance salespeople in a fiduciary relationship with the insured. Under Illinois law, only insurance brokers owe the insured a fiduciary duty. See *Zannini*, 147 Ill. 2d at 451; *Moore v. Johnson County Farm Bureau*, 343 Ill. App. 3d 581, 585 (2003). Defendants, therefore, conclude that the plain language of the statute indicates the term "insurance producer" is limited to insurance brokers.

¶ 23    Contrary to defendants' argument, construing "insurance producer" to include both captive agents and brokers does not render subsections (b) and (d) meaningless or superfluous. The statute accomplishes the purpose of limiting an insurance broker's liability for breach of a fiduciary duty regardless of whether captive agents are also included as insurance producers.

¶ 24    Further, the overall purpose of section 2-2201 is not restricted to limiting the fiduciary liability of insurance producers. Subsection (d) states that the statute does not release an insurance producer from liability for negligence (735 ILCS 5/2-2201(d) (West 2010)), and subsection (a) specifically provides negligence liability for insurance producers (735 ILCS 5/2-2201(a) (West 2010)). Subsection (a) would be unnecessary if the sole purpose of section 2-2201 were to limit the fiduciary liability of insurance producers.

¶ 25    The terms of subsection (a) may reasonably be applied to both captive agents and brokers. According to subsection (a), an insurance producer must "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a) (West 2010). This court has long held that " 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.' " *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19 (quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990)). Thus, if a defendant's action creates a foreseeable risk of injury, the defendant has a duty to protect others from that injury. *Simpkins*, 2012 IL 110662, ¶ 19.

¶ 26    The duty of ordinary care imposed in subsection (a) is not based on a fiduciary relationship between an insurance producer and the insured. Rather, it is a duty to exercise ordinary care that may be applied to any insurance salesperson regardless of whether a fiduciary or agency relationship exists. A fiduciary or agency relationship between the insurance producer and the insured is not required to establish a duty in this context. See *Simpkins*, 2012 IL 110662, ¶ 19.

¶ 27    In enacting section 2-2201, the legislature used the general undefined term "insurance producer" rather than distinguishing between insurance agents and brokers. The undefined term "insurance producer" in section 2-2201 may reasonably be understood as referring to either an agent or a broker, or both. Accordingly, the statute is ambiguous because it may reasonably be understood in two or more different senses.

¶ 28    When a statute is ambiguous, we will turn to extrinsic aids of construction to determine the legislature's intent, including legislative history and well-established rules of construction. *Nowak*, 2011 IL 111838, ¶ 13. Courts may look to similar statutes as an aid to construction because it is presumed that statutes relating to the same subject are governed by a single spirit and policy. *People v. Bingham*, 2014 IL 115964, ¶ 42.

¶ 29    In this case, we begin with the definition of "insurance producer" in section 500-10 of the Insurance Code. According to section 500-10, " '[i]nsurance producer' means a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2010). That broad definition includes both captive agents and insurance brokers.

¶ 30    Defendants argue that we should not consider the definition from the Insurance Code because it is not part of section 2-2201 or the Code of Civil Procedure. The Insurance Code and section 2-2201 both relate to the same subject of insurance regulation, however. Section 2-2201 expressly refers to the Insurance Code (see 735 ILCS 5/2-2201(c) (West 2010)), thus acknowledging a connection between those provisions. We further observe that section 2-2201 became effective in 1997 and the definition of "insurance producer" in the Insurance Code became effective in 2002. We presume that the legislature was aware of section 2-2201 when it enacted the definition of "insurance producer." See *State v. Mikusch*, 138 Ill. 2d 242, 247-48 (1990) ("It is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments."). Accordingly, we believe that the definition of "insurance producer" adopted by the legislature in the Insurance Code should be given substantial weight in determining the definition of that term in section 2-2201.

¶ 31    Defendants contend that the legislative history of section 2-2201 indicates it was not intended to apply to captive insurance agents. Defendants, however, do not identify any specific statement in the legislative history supporting their argument. The legislative history does not reveal any discussion on the meaning of the term "insurance producer." In discussing the bill, members of the General Assembly consistently referred to "insurance agents" rather than "brokers" or "insurance producers." In addressing Senate Bill 1279, Senator Madigan stated it would:

> "limit the liability of insurance agents in non-fiduciary relationships with their customers. It would retain the language that would govern them when they are in a fiduciary relationship with their consumer. This is an initiative of the independents—agents association, and it would also add—adds a provision that no portion of the Section would invalidate the term of a contractual agreement between an insurance agent and a company." 89th Ill. Gen. Assem., Senate Proceedings, Mar. 27, 1996, at 62 (statements of Senator Madigan).

¶ 32    In remarks to the House of Representatives, Representative Brady asserted the Bill provides that:

> " 'insurance agents be held at the fiduciary standard if the cause of action involves the wrongful retention of misappropriation by an agent of any money that was received as premiums *** as a premium deposit or payment of claim. It also continues to hold the agents responsible under [the] standard of ordinary care.' " 89th Ill. Gen. Assem., House Proceedings, May 8, 1996, at 166 (statements of Representative Brady).

¶ 33    The statements of Senator Madigan and Representative Brady appear to be intended to provide a basic summary of the Bill. The general term "insurance agents" is used and no express distinction is drawn between agents and brokers. In fact, there is no mention of insurance brokers in those statements. Representative Brady's remarks in particular may be read to indicate that the statute is intended to apply broadly to insurance agents. In any case, the legislative history does not support defendants' argument that section 2-2201 was not intended to apply to captive insurance agents.

¶ 34    Defendants further argue that the common law has not previously recognized a duty owed by a captive insurance agent to an insured. Defendants claim that under established canons of statutory construction, a statute should not be interpreted to change the common law or create a new liability unless the statutory terms mandate that construction. See *People v. Jones*, 214 Ill. 2d 187, 200 (2005) (In general, a statute will not be construed to change the settled law of the state unless its terms clearly require such a construction.). Defendants conclude that section 2-2201 does not indicate any clear intent to change the common law or create a new duty for captive agents to insureds.

¶ 35    Defendants' argument on this point fails because Illinois courts have previously recognized that a captive agent may owe a duty to an insured under certain circumstances. In *Talbot v. Country Life Insurance Co.*, 8 Ill. App. 3d 1062, 1065 (1973), the appellate court held that a captive insurance agent may be liable for unreasonably delaying action on an application for life insurance. The appellate court held the agent had a duty of care based on the negligence principle of affirmative undertaking, providing that a person who begins a service for another must exercise reasonable care in performing it to avoid injury to the beneficiary of the undertaking. *Talbot*, 8 Ill. App. 3d at 1065.

¶ 36    In *Bovan v. American Family Life Insurance Co.*, 386 Ill. App. 3d 933, 940-41 (2008), the appellate court reaffirmed that a captive insurance agent may owe a proposed insured a duty to exercise ordinary care in some circumstances. Although a duty did not arise from the facts presented in *Bovan*, the appellate court stated an insurance agent owes a duty of ordinary care if the agent "acts so as to induce detrimental reliance by the proposed insured." *Bovan*, 386 Ill. App. 3d at 940 (citing *Wakulich v. Mraz*, 203 Ill. 2d 223, 241 (2003)).

¶ 37    We believe section 2-2201(a) imposes a duty similar to the one previously recognized by our appellate court in *Talbot* and *Bovan*. Section 2-2201(a) requires an insurance producer to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage *requested by the insured or proposed insured*." (Emphasis added.) 735 ILCS 5/2-2201(a) (West 2010). Under section 2-2201(a), a duty to exercise ordinary care arises only after coverage is "requested by the insured or proposed insured." At that point, section 2-2201 requires insurance producers to exercise ordinary care and skill in responding to the request, "either by providing the desirable coverage or by notifying the applicant of the rejection of the risk." *Talbot*, 8 Ill. App. 3d at 1065.

¶ 38    Defendants also argue that negative consequences will result from imposing a duty of ordinary care on captive insurance agents. Captive agents are contractually bound to sell only their own company's insurance. According to defendants, if a duty of ordinary care is imposed on captive agents, they could be held liable for failing to place coverage with a different company if it would better suit the customer's needs.

¶ 39    Defendants' concerns are misplaced. Section 2-2201 does not require an agent to obtain the best possible coverage for a customer, but only requires the agent to exercise ordinary care and skill in obtaining the coverage requested by the insured or proposed insured. 735 ILCS 5/2-2201(a) (West 2010). If an agent's company does not offer the coverage requested, the agent may satisfy the duty by simply notifying the customer that he or she should look elsewhere for the requested coverage.

¶ 40    Finally, defendants maintain that to impose negligence liability on an agent under section 2-2201, an insured would only have to claim he "asked [his] agent to make sure [he] was covered." On this point, our appellate court has held that section 2-2201 does not obligate an insurance producer to procure a policy that is not specifically requested by the insured. See *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915 (2010). In *Carlini*, the owner and the manager of a store asked a licensed insurance producer to obtain insurance for the store. The owner testified at her deposition that she asked the insurance producer to "make sure that all of the requirements for insurance [were] taken out, including the building, *** the liquor, any type of liability policy." The owner admitted she did not specifically request workers' compensation insurance or inquire about whether that insurance was needed. The manager testified that he only asked if the insurance producer was going to take care of the insurance and the issue of workers' compensation insurance was not specifically addressed. *Carlini*, 399 Ill. App. 3d at 917-18.

¶ 41    The insurance producer obtained coverage for "liquor liability" and other forms of coverage for the business and its premises, but he did not obtain workers' compensation coverage. An employee was subsequently injured while working at the store. The store brought suit against the insurance producer, alleging he negligently failed to obtain or offer to obtain workers' compensation insurance and failed to advise plaintiff that workers' compensation

insurance was required by law. In affirming the dismissal of the complaint, the appellate court held that section 2-2201 did not apply because workers' compensation insurance was never requested. Given that the plaintiff never requested or inquired about workers' compensation insurance, the appellate court held the insurance producer did not owe a duty under section 2-2201 to procure that insurance or to offer advice on whether it was needed. *Carlini*, 399 Ill. App. 3d at 920.

¶ 42        We agree with our appellate court's construction of section 2-2201(a) in *Carlini*. Section 2-2201(a) only imposes a duty of ordinary care after a specific request is made. Thus, contrary to defendants' argument, a duty may not be imposed under section 2-2201(a) based on a vague request to make sure the insured is covered.

¶ 43        In sum, we conclude that the best evidence of the legislature's intent in using the term "insurance producer" is the statutory definition in section 500-10 of the Insurance Code. When read together with that definition, section 2-2201 provides that a person required to be licensed to sell insurance has a duty to exercise ordinary care and skill in renewing, procuring, binding, or placing coverage requested by the insured or proposed insured. 735 ILCS 5/2-2201(a) (West 2010).

¶ 44        In ruling on a section 2-619 motion to dismiss, the well-pleaded allegations of a complaint must be taken as true. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Plaintiffs allege Lessaris failed to exercise ordinary care in procuring the insurance coverage they specifically requested. The declarations page showing the addition of a driver "female, 30-64" indicates that Skaperdas actually requested the extension of coverage to Day. Plaintiffs allege Country Casualty required Skaperdas to add Day as an additional driver on the policy after she was involved in an accident while driving one of his vehicles. Taken as true, those allegations show that a specific request for coverage was made in this case.

¶ 45        The allegations of plaintiffs' complaint fit within the specific statutory language requiring insurance producers to "exercise ordinary care and skill in *** procuring *** the coverage requested by the insured." 735 ILCS 5/2-2201(a) (West 2010). Accordingly, we conclude that section 2-2201 imposed a duty of ordinary care on Lessaris to procure the insurance coverage specifically requested by plaintiffs.

¶ 46        Country Casualty maintains that it cannot be held liable for Lessaris's actions because he did not owe a duty to plaintiffs. Country Casualty also contends that section 2-2201 does not indicate any intent to hold a principal liable for an agent's actions. Country Casualty's argument necessarily fails because we have held Lessaris owed plaintiffs a duty of ordinary care under section 2-2201(a). Under the doctrine of *respondeat superior*, a principal may be held liable for the tortious conduct of an agent, even if the principal does not engage in any tortious conduct. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 42 (quoting *Woods v. Cole*, 181 Ill. 2d 512, 517 (1998)).

¶ 47                                    III. CONCLUSION

¶ 48        For the reasons stated above, the appellate court's judgment reversing the dismissal of counts I and II of plaintiffs' amended complaint is affirmed, and the cause is remanded to the circuit court for further proceedings.

¶ 49        Affirmed and remanded.