2020 IL App (1st) 190623

FIRST DISTRICT
SIXTH DIVISION
June 19, 2020

No. 1-19-0623

| | | |
|---|---|---|
| AMERICAN ADVISORS GROUP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE COCKRELL, a/k/a Bruce E. | ) | |
| Cockrell, Deceased; ELOISE COCKRELL, | ) | No. 17 CH 09122 |
| a/k/a Eloise Laurene Cockrell; and THE UNITED | ) | |
| STATES OF AMERICA, By and Through the | ) | |
| Secretary of Housing and Urban Development, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Eloise Cockrell, Defendant-Appellant; Kerwin | ) | Cecelia Horan, |
| Cockrell, Intervenor-Appellant). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Cunningham and Justice Connors concurred with the judgment and opinion.

**OPINION**

¶ 1     Appellants, Kerwin and Eloise Cockrell, appeal the order of the circuit court denying their petition filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)). The court found that appellants' claim was barred by section 15-1509(c) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1509(c) (West 2016)). On appeal, appellants contend the trial court erred in applying section 15-1509(c) where the underlying mortgage was void due to fraud. They also contend that they satisfied section 2-1401's requirements of a meritorious defense and due diligence. For the following reasons, we affirm.

¶ 2                                    I. JURISDICTION

¶ 3    The trial court denied the petition on March 6, 2019. Appellants filed their notice of appeal on March 26, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5     Prior to the underlying proceedings, the Cockrell family owned and lived in the two-unit residential building located at 743 North Spaulding Avenue in Chicago, Illinois, for 50 years. Kerwin, who lived in one of the units, was the record title holder of the building. Bruce, Kerwin's brother, lived in the other unit with his wife Eloise.

¶ 6    In 2013, Kerwin and Bruce were contacted by Mark Diamond, who was in the neighborhood offering free home repairs. He told the brothers that in order to receive the repairs they would need to obtain a reverse mortgage. As instructed by Diamond, Kerwin executed a quitclaim deed and conveyed the property to Bruce, who was closer to 62 years old, the minimum age required to obtain a reverse mortgage. Bruce then transferred the property to himself and Eloise as joint tenants. Bruce and Eloise signed a note and reverse mortgage with plaintiff American Advisors Group (AAG) on January 10, 2014. The maximum principal amount of the loan was $262,500.

¶ 7    Per the terms of the mortgage, the Cockrells were required to "occupy, establish, and use the Property" as their principal residence "for the term of the Security Instrument." The mortgage further provided:

> "9. Grounds for Acceleration of Debt.

(a) Due and Payable. Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property *** is sold or otherwise transferred and no other Borrower retains title to the Property ***.

(b) Due and Payable with Secretary Approval. Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) Notice to Lender. Borrower shall notify Lender whenever any of the events listed in this Paragraph 9(a)(ii) and (b) occur."

¶ 8    The Cockrells, however, never received proceeds from the reverse mortgage, and their home "received little to no repairs as compared to what was promised by Diamond." Kerwin and the Cockrells were unaware that, in 2003, the Federal Trade Commission (FTC) and the State of

Illinois filed a complaint against Diamond alleging that he engaged in unfair or deceptive practices in violation of the Federal Trade Commission Act (FTC Act). A consent decree was issued permanently restraining and enjoining Diamond from conducting sales of "any loan or other extension of credit." Despite the decree, Diamond continued to target senior homeowners in furtherance of his scheme. In 2009, the Illinois Attorney General filed a complaint against Diamond. In 2016, the court issued a restitution order against Diamond and in favor of Bruce Cockrell, for $59,500. The total restitution amount ordered was more than $2.3 million.

¶ 9    Bruce passed away on May 18, 2016. After his death, Eloise and Kerwin continued to live at the residence. Eloise lived in the unit with her son, Maurice. On January 3, 2017, AAG sent a "1st Notice" annual occupancy certificate letter to Bruce and Eloise that stated, "[a]s a requirement of your reverse mortgage loan, we are required to confirm, on an annual basis, that the property which secures your mortgage is still your primary residence." The letter requested that Bruce and Eloise sign the document indicating that they occupied the mortgaged property as their primary residence. It stated that "[t]his annual certification is a requirement of your reverse mortgage." The letter also reminded them that "it is your responsibility to advise us in writing of any absences from your property that exceeds two (2) months, and provide a temporary mailing address, to avoid a determination that your principal residence has changed."

¶ 10    On February 1, 2017, a "2nd Notice" annual occupancy certificate letter was sent to Bruce and Eloise stating:

"Approximately a month ago, we advised you of the need to confirm your occupancy status. This annual certification is a requirement of your reverse mortgage. If the property

is not your primary residence, please provide a written explanation and return it to us as soon as possible.

As a reminder, it is your responsibility to advise us in writing of any absences from your property that exceeds two (2) months, and provide a temporary mailing address, to avoid a determination that your principal residence has changed. If you have entered into a tax deferral program please contact us at the number below.

*Please note: If you do not complete and return this document by mail or fax, you may be in default of your reverse mortgage. If we do not receive a response within 30 days, we will be required to send a representative to your home to confirm your occupancy status. Pursuant to the terms of your agreement, the cost of this visit and any future property inspections will be charged to the loan balance.*" (Emphasis in original.)

¶ 11    On March 13, 2017, AAG sent a letter to Bruce and Eloise informing them that AAG has not "received the required annual Occupancy Certificates that were previously sent to you, prompting the loan to be placed in default status." The letter reiterated that they must notify AAG in writing if they "will be absent from the property in excess of 2 months" and must notify AAG "immediately if the property is not your primary residence." The letter requested the return of the Occupancy Certificate and stated, if AAG did not receive a response "within 30 days of the date of this letter, this loan could be called due and payable for non-occupancy of the property."

¶ 12    On June 30, 2017, AAG filed a complaint for foreclosure against Bruce and Eloise. The complaint sought $79,687.04 and identified the default as "failing to occupy the subject premises pursuant to the terms of the Mortgage and Note at issue." On July 7, 2017, Eloise was personally served with a mortgage foreclosure summons at 743 N. Spaulding Avenue in Chicago.

¶ 13    In her affidavit of amounts due and owing, Jane Ward, assistant vice president of Celink, attorney for AAG, stated that

"[t]he loan at issue is a reverse mortgage, which is not due and payable until the occurrence of one of the following events:

a.) A borrower dies and the property no longer serves as the principal residence of at least one surviving Borrower; or

b.) The Borrower transfers all of his/her interest in the subject property and no other Borrower retains or has any interest, including a leasehold interest, in same; or

c.) The property ceases to be the principal residence of the Borrower for reasons other than the Borrower's death and is not the principal residence of at least one other Borrower; or

d.) The borrower has not occupied the property for more than 12 months due to physical or mental illness and the property is not the principal residence of at least one other Borrower; or

e.) An obligation of the Borrower under the Security Instrument is not otherwise performed."

¶ 14    The affidavit stated that the "loan at issue does not require regular or periodic payments" and that disbursements were made to the borrower "at or near the time of the transactions recorded." Based on the records, the Cockrells failed to pay the amount due under the note of $88,328.96.

¶ 15    With no answer filed, the court below entered a default judgment of foreclosure and sale on October 2, 2017. The order found that "default has been made in making the monthly payment

provided for in said Note for more than thirty (30) days past, and said default continues to the date hereof." A foreclosure sale was held on February 8, 2018, and AAG was the successful bidder. An order confirming the sale was entered on March 6, 2018, and the selling officer was directed to execute a deed to the property in favor of AAG.

¶ 16    An eviction order was entered against Ella Thompson, an alias of Eloise, on October 10, 2018. The order stated that AAG was given possession of the property at 743 N. Spaulding Avenue and that defendant must move by October 17, 2018, or be evicted. Kerwin was also served with an eviction action, and he became aware of the proceedings for the first time. He filed a petition to intervene on October 26, 2018, and that same day, he and Eloise filed an emergency motion to stay enforcement of the foreclosure judgment, which the trial court granted.

¶ 17    On October 29, 2018, Kerwin and Eloise (petitioners) filed a section 2-1401 petition alleging fraud and misrepresentation in that AAG was aware Eloise resided at the property and yet proceeded with the foreclosure despite the fact the mortgage was not in default. In her affidavit, Eloise stated that she has "continuously resided at the subject property for the last 40 years." She stated that she was served at the property and she spoke to the process server about Bruce's death. They only spoke of Bruce. Also, the documents he left with her referenced Bruce on the top, and Eloise did not realize she was involved because "we did not owe any money."

¶ 18    On March 6, 2019, the trial court denied the petition, finding that section 15-1509(c) of the Foreclosure Law "is an entire bar of claims of parties to the foreclosure after title vests in purchaser." Petitioners filed this appeal.

¶ 19                                   III. ANALYSIS

¶ 20    The trial court's denial of a section 2-1401 petition is reviewed *de novo*. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). This appeal also requires interpretation of section 15-1509(c) of the Foreclosure Law. Our objective in interpreting a statute is to ascertain and give effect to legislative intent, which is most reliably indicated by the plain language of the statute. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Where the statutory language is clear, "it must be applied as written without resort to aids or tools of interpretation." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Questions of statutory interpretation are also reviewed *de novo*. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15.

¶ 21    Section 15-1509 provides:

"(a) Deed. After (i) confirmation of the sale, and (ii) payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the court *** shall upon the request of the holder of the certificate of sale (or the purchaser if no certificate of sale was issued), promptly execute a deed to the holder or purchaser sufficient to convey title. ***

(b) Effect Upon Delivery of Deed. Delivery of the deed executed on the sale of the real estate, even if the purchaser or holder of the certificate of sale is a party to the foreclosure, shall be sufficient to pass the title thereto.

(c) Claims Barred. Any vesting of title *** by deed pursuant to subsection (b) of Section 15-1509, unless otherwise specified in the judgment of foreclosure, shall be an entire bar of (i) all claims of parties to the foreclosure *** notwithstanding the provisions of subsection (g) of Section 2-1301 to the contrary." 735 ILCS 5/15-1509 (West 2016).

¶ 22    Petitioners did not challenge the confirmation of sale and do not dispute that the deed was delivered pursuant to section 15-1509(b). After the sale is confirmed and the deed is delivered, the plain language of section 15-1509(c) bars all claims of parties to the foreclosure, including relief sought under section 2-1401. *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 30. However, there are recognized exceptions to this rule. One exception, which does not apply here, is that a party may claim an interest in the proceeds of sale pursuant to subsection (g) of section 2-1301 of the Code. 735 ILCS 5/15-1509(c) (West 2016).

¶ 23    A second exception is that a party may challenge the foreclosure judgment as void due to lack of jurisdiction. See *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 15 (holding that "section 15-1509 applies only to valid judgments entered with jurisdiction over the parties and the subject matter"). In *Brewer*, the court reasoned that a judgment entered without personal jurisdiction is void *ab initio* and "nothing in section 15-1509 indicates that the legislature sought to make foreclosure judgments take effect and deprive owners of their properties when the trial court lacked personal jurisdiction over the owners." *Id.* Petitioners use this reasoning to argue that, since fraud rendered the underlying default foreclosure judgment void *ab initio*, section 15-1509(c) likewise does not bar their claim.

¶ 24    Not all fraud, however, renders a judgment void. See *In re M.B.*, 235 Ill. App. 3d 352, 377-78 (1992). "An order is rendered void not by error or impropriety but by lack of jurisdiction by the issuing court." *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 165 (1983). Where fraud prevented a court from acquiring jurisdiction or merely gave the court colorable jurisdiction, sometimes referred to as "extrinsic fraud," the judgment obtained as a result is void. *In re Adoption of E.L.*, 315 Ill. App. 3d 137, 154 (2000). Extrinsic fraud "occurs in situations where an

unsuccessful party has been prevented from fully exhibiting his case by being kept away from the court or is kept from gaining knowledge of the suit." *Id.* Such fraud has "the purpose and effect of preventing the court from acquiring personal jurisdiction" over the unsuccessful party. *Id.*

¶ 25    The record shows that Eloise was not kept from the court or prevented from gaining knowledge of the foreclosure complaint. AAG sent her at least two notices regarding the confirmation of her primary residence before filing the foreclosure complaint, and Eloise did not deny she received the documents. Eloise, as a mortgagor, was also a necessary party to the foreclosure action who must be personally served. *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 535-36 (2010). Eloise acknowledges that she was personally served with the mortgage foreclosure summons, although she did not answer because she did not think she was involved. There is no question the trial court had personal jurisdiction over Eloise when it entered the default judgment against her. Any fraud occurring after the court acquired proper jurisdiction, such as false testimony or concealment, renders the judgment voidable but not void. *M.B.*, 235 Ill. App. 3d at 378. Accordingly, since there was no extrinsic fraud that deprived the trial court below from acquiring valid jurisdiction, the foreclosure judgment was not void *ab initio*, and section 15-1509(c) bars petitioners' claims.

¶ 26    Petitioners contend that Diamond's fraudulent scheme caused Kerwin to transfer his title to Bruce and, absent that fraud, Kerwin would have been the proper party in the proceedings and he would have defended against the foreclosure complaint. They point out that Eloise did not know about the foreclosure proceedings because, even though she saw the documents, she did not believe they pertained to her because Bruce's name was listed first. She did not understand their significance because she had a reverse mortgage and did not owe any money. Furthermore, the

record shows AAG was aware that 743 N. Spaulding was Eloise's primary residence because she was personally served a summons at that property and she was named on an order of eviction involving the property. Adding to the injustice, the requirement that Eloise annually confirm her residency by filling out and returning the occupancy certificate, the basis for the default AAG alleged in its foreclosure complaint, is not found in the mortgage document. Petitioners argue that this court should not reward AAG for taking advantage of Diamond's fraud, Eloise's confusion, and its own misrepresentations.

¶ 27     This court does not condone the fraud that occurred here, and we agree there are legitimate questions concerning AAG's occupancy confirmation process. However, we cannot overstate to litigants the importance of knowing and understanding their rights. Although Eloise did not believe that the AAG documents pertained to her, she did understand that they referenced the mortgage, and she should have sought more information rather than ignore them. AAG sent its "1st Notice" annual occupancy certificate letter on January 3, 2017, and sent two other notices before filing its foreclosure complaint on June 30, 2017. Eloise had ample opportunity to learn what was required of her, and to comply, prior to AAG's filing of the foreclosure complaint.

¶ 28     This case also illustrates the importance of exercising one's rights in a timely manner. Petitioners' arguments represent meritorious defenses to the foreclosure complaint, and the Foreclosure Law allows mortgagors to raise such defenses to the complaint. Until the motion to confirm the judicial sale is filed, a borrower may seek to vacate the foreclosure judgment based on a meritorious defense as set forth in section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2016)). *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27. Unfortunately, Eloise never raised these defenses in the foreclosure proceedings. Even after a motion to confirm the sale is

filed, the Foreclosure Law allows courts to set aside the foreclosure judgment if "justice was otherwise not done." 735 ILCS 5/15-1508(b)(iv) (West 2016). This subsection applies when "either the lender, through fraud or misrepresentation, prevented the borrower from raising [her] meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal [s]he was otherwise prevented from protecting [her] property interests." *McCluskey*, 2013 IL 115469, ¶ 26.

¶ 29 The posture of this case, however, goes beyond the confirmation of sale to the delivery of the deed pursuant to section 15-1509(b). Our legislature made clear, through the plain language of subsection (c), that the vesting of title by deed pursuant to subsection (b) "shall be an entire bar of ***all claims of parties to the foreclosure" (735 ILCS 5/15-1509(c) (West 2016)), subject to limited exceptions that do not apply here. Petitioners essentially ask this court to ignore legislative intent and carve another exception into subsection (c), which we cannot do even if it would lead to a more desirable outcome in this case. "Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express." *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010).

¶ 30 Due to our disposition of this appeal, we need not consider whether the section 2-1401 petition sufficiently alleged the existence of a meritorious defense or claim, due diligence in presenting the defense or claim, or due diligence in filing the section 2-1401 petition.

¶ 31                                    IV. CONCLUSION

¶ 32 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 33 Affirmed.

**No. 1-19-0623**

| | |
|---|---|
| **Cite as:** | *American Advisors Group v. Cockrell*, 2020 IL App (1st) 190623 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-09122; the Hon. Cecelia Horan, Judge, presiding. |
| **Attorneys for Appellant:** | J. Samuel Tenenbaum, of Northwestern Pritzker School of Law, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Scott B. Mueller and Anne J. Kelly, of Stinson LLP, of St. Louis, Missouri, for appellee. |