**2020 IL 125508**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125508)

POLICEMEN'S BENEVOLENT LABOR COMMITTEE, Appellee, v.
THE CITY OF SPARTA, Appellant.

_Opinion filed November 19, 2020._

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Karmeier, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Policemen's Benevolent Labor Committee (Union) filed a complaint for declaratory judgment seeking a ruling that an activity-points policy used by defendant City of Sparta to evaluate the performance of its police officers established an unlawful ticket quota in violation of section 11-1-12 of the Illinois Municipal Code (65 ILCS 5/11-1-12 (West 2016)). The circuit court of Randolph

County granted the City summary judgment on the Union's complaint. The appellate court reversed and remanded with directions to enter summary judgment in favor of the Union, holding that the activity-points policy violates the plain language of section 11-1-12 of the Municipal Code. 2019 IL App (5th) 190039-U. For the following reasons, we affirm the appellate court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        The plaintiff Union is the exclusive bargaining representative for the City's full-time patrol officers and dispatchers. Effective January 13, 2013, the City instituted an activity-points policy for evaluating the performance of its police officers. The City's "activity points system" requires all full-time officers to meet a monthly points minimum. Under the policy, day-shift officers must accumulate at least 82 points, while the standard for night-shift officers is 65 points. The policy awards points for the following activities:

> "Cases-2 points each; Citations-2 points each; NCR-1 point each; Traffic stop warning (Both written and verbal)-1. Extra duty assignment[s] that earn points[:] Drug task force duties; Investigations that take more than the shift they were created on to complete; Shooting range training; Training outside the department full or half day; Court time full or half day; Full day extra duty-dayshift 5, nightshift 4; Half day extra duty-dayshift 2.5[,] nightshift 2. Days off-Full day dayshift-5; Full day nightshift-4; Half day dayshift-2.5; Half day nightshift-2."

¶ 4        The policy provides that the minimum monthly points levels will be adjusted each year "to create the appropriate difference between dayshift and nightshift." The policy further states "[a]wards for Officer of the Month and of the Year will be based on most points earned over the Officer's month[ly] minimum standard." The policy is also used to discipline officers, stating:

> "Failure to reach the minimum monthly points will result in discipline. Discipline will be corrective and progressive in nature. If an Officer fails to meet the minimum standard that Officer will be given a verbal warning and is required to meet the standard for the next two months. If the Officer meets the standard for the next two months the verbal warning will be removed from his

or her personal file. If the Officer fails to meet the standard again in the two month period discipline will be progressive."

¶ 5   The plaintiff Union subsequently filed a two-count second amended complaint. In count I, plaintiff requested a declaratory judgment under section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2016)). Plaintiff alleged the City's activity-points policy establishes an unlawful ticket quota in violation of section 11-1-12 of the Municipal Code (65 ILCS 5/11-1-12 (West 2016)) because it awards points to officers for issuing citations. Plaintiff, therefore, sought a declaration that the policy is unlawful and unenforceable because it violates section 11-1-12. In count II, plaintiff sought an order confirming an unrelated arbitration award.

¶ 6   The parties filed cross-motions for summary judgment on count I of the complaint (735 ILCS 5/2-1005 (West 2018)). Following a hearing, the circuit court found the language of section 11-1-12 ambiguous. The circuit court, therefore, reviewed the legislative history and concluded that the City's activity-points policy did not violate section 11-1-12. Accordingly, the circuit court granted the City's motion for summary judgment and denied the Union's motion. The circuit court granted the Union's application to confirm the arbitration award contained in count II of its complaint.

¶ 7   The Union appealed the circuit court's order granting the City summary judgment on count I of the complaint, contending that the activity-points policy violates the plain language of section 11-1-12. The appellate court agreed, holding that the plain language of the statute prohibits consideration of the number of citations issued when evaluating a police officer's performance based on points of contact. 2019 IL App (5th) 190039-U, ¶ 19. The appellate court concluded that the policy "does exactly what is prohibited by the plain language of the statute, *i.e.*, it permits the department to evaluate its officers by including the issuance of citations or the number of citations issued, among other things, as a point of contact." 2019 IL App (5th) 190039-U, ¶ 24. The appellate court, therefore, reversed the circuit court's order granting the City summary judgment on count I and remanded with directions to enter summary judgment in favor of the Union on that count. 2019 IL App (5th) 190039-U, ¶ 26.

¶ 8    We allowed the City's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2019)). We also allowed the Illinois Association of Chiefs of Police to file an *amicus curiae* brief (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 9                                    II. ANALYSIS

¶ 10    On appeal to this court, the City contends its activity-points policy does not violate the plain language of section 11-1-12 when the statute is read as a whole. The policy does not require officers to write a specific number of citations within a certain period of time or compare officers based on the number of citations issued. Indeed, the Union has acknowledged that officers may meet the monthly points requirement under the policy without writing any citations. The City maintains that the appellate court erred in reading the final sentence of section 11-1-12 in isolation, effectively rendering the remaining language in the section superfluous. Alternatively, the City contends the statute is ambiguous and that the legislative history clarifies that section 11-1-12 is only intended to prohibit ticket quotas requiring the issuance of a certain number of citations within a designated period of time. The City's activity-points policy does not violate section 11-1-12 because it does not establish any requirement for officers to write a specific number of citations in a given period of time.

¶ 11    The Union responds that section 11-1-12 specifically states what may and may not be counted as a point of contact when evaluating a police officer's job performance with a points-based system. In violation of the plain statutory language, the City's activity-points policy awards two points for each citation issued by a police officer as a point of contact. Section 11-1-12 is not ambiguous. While municipalities may use points-based systems to evaluate their police officers, the Union contends that the statute plainly prohibits the City's practice of counting citations and awarding them points as part of its activity-points policy. The City's argument that it may include issuance of citations in its activity-points policy is, in fact, the exact opposite of what the plain statutory language provides, according to the Union.

¶ 12    In this case, the parties filed cross-motions for summary judgment on count I of the Union's complaint. Section 2-1005(c) of the Code of Civil Procedure provides that summary judgment is appropriate when "the pleadings, depositions,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). When the parties file cross-motions for summary judgment, they agree that no factual issues exist and invite the court to decide any questions of law based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The circuit court's decision on a motion for summary judgment is reviewed *de novo*. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16.

¶ 13     In this appeal, we must determine whether the City's activity-points policy violates section 11-1-12 of the Municipal Code. This appeal, therefore, presents an issue of statutory construction. The construction of a statute is a question of law subject to *de novo* review. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12.

¶ 14     When construing a statute, our fundamental objective is to ascertain and give effect to the intent of the legislature. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. The most reliable indicator of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. A statute should be considered in its entirety, with all words and phrases construed in light of other relevant statutory provisions and not in isolation. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14. In interpreting a statute, a court should not render any part meaningless or superfluous. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15.

¶ 15     When the language of a statute is clear and unambiguous, we must apply it as written, without resort to legislative history or other extrinsic sources to determine legislative intent. *Raab v. Frank*, 2019 IL 124641, ¶ 18. We may not read into the statute exceptions, conditions, or limitations conflicting with the expressed legislative intent. *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 24. If the statutory language is ambiguous, however, we may consider extrinsic aids of construction. *Skaperdas*, 2015 IL 117021, ¶ 16.

¶ 16     Section 11-1-12 of the Municipal Code states, in pertinent part:

"Quotas prohibited. A municipality may not require a police officer to issue a specific number of citations within a designated period of time. This prohibition

shall not affect the conditions of any federal or State grants or funds awarded to the municipality and used to fund traffic enforcement programs.

A municipality may not, for purposes of evaluating a police officer's job performance, compare the number of citations issued by the police officer to the number of citations issued by any other police officer who has similar job duties. Nothing in this Section shall prohibit a municipality from evaluating a police officer based on the police officer's points of contact. For the purposes of this Section, 'points of contact' means any quantifiable contact made in the furtherance of the police officer's duties, including, but not limited to, the number of traffic stops completed, arrests, written warnings, and crime prevention measures. Points of contact shall not include either the issuance of citations or the number of citations issued by a police officer." 65 ILCS 5/11-1-12 (West 2016).

¶ 17    The critical issue here is whether the City may include the issuance of citations, along with other activities, as a point of contact in its activity-points policy used to evaluate the job performance of police officers. The statutory language could not be clearer on that point. While the statute does not prohibit a municipality from evaluating police officers based on points of contact, it expressly states that "[p]oints of contact shall not include either the issuance of citations or the number of citations issued by a police officer" (65 ILCS 5/11-1-12 (West 2016)). As the appellate court held, the policy "does exactly what is prohibited by the plain language of the statute, *i.e.*, it permits the department to evaluate its officers by including the issuance of citations or the number of citations issued, among other things, as a point of contact." 2019 IL App (5th) 190039-U, ¶ 24. The City's policy counting the issuance of citations as points of contact is in direct violation of section 11-1-12's unambiguous statement that "[p]oints of contact shall not include *** the issuance of citations." 65 ILCS 5/11-1-12 (West 2016).

¶ 18    The City contends, nonetheless, that the appellate court rendered language in section 11-1-12 superfluous by reading the final sentence of the statute in isolation. According to the City, the activity-points policy does not violate the central command of section 11-1-12, prohibiting ticket quotas that require officers to write a specific number of citations within a designated time period. The City maintains that the statute is ambiguous if the final sentence is interpreted literally because the

- 6 -

rest of the statute does not create a *per se* prohibition on considering citations in an evaluation system. We disagree.

¶ 19    The first paragraph of section 11-1-12 provides a general statement prohibiting citation quotas, defined as "requir[ing] a police officer to issue a specific number of citations within a designated period of time." 65 ILCS 5/11-1-12 (West 2016). The second paragraph, applicable here, provides very specific guidance on points-of-contact systems. The statute states it does not prohibit evaluating police officers with points-of-contact systems. The statute broadly defines a "point of contact" as "any quantifiable contact made in the furtherance of the police officer's duties," with the sole exception being "the issuance of citations or the number of citations issued." 65 ILCS 5/11-1-12 (West 2016).

¶ 20    Thus, while section 11-1-12 prohibits any express quota requiring police officers to issue a certain number of citations in a designated period of time, it also prohibits including the issuance of citations in a points-of-contact policy. The two requirements do not conflict. Rather, they are both directed at the same goal of prohibiting ticket quotas. The latter "points of contact" provision simply seeks to ensure that municipalities may not impose ticket quotas indirectly within their points-of-contact policies.

¶ 21    Contrary to the City's argument, we do not believe that a literal interpretation of the final sentence of section 11-1-12 conflicts with the rest of the section. The provisions are all aimed at preventing citation quotas. As we have found, the statute could not be clearer on the specific issue presented by this appeal, *i.e.*, whether issuance of citations may be included as points of contact in the City's policy. The statute simply cannot reasonably be read to permit municipalities to include the issuance of citations as points of contact. To accept the City's argument, we would have to read the last sentence of section 11-1-12 out of the statute. Of course, we may not rewrite the statute or render statutory language superfluous. *Skaperdas*, 2015 IL 117021, ¶ 15. We must apply the statutory language as written.

¶ 22    Accordingly, we conclude that the plain language of section 11-1-12 prohibits municipalities from including the issuance of citations in a "points of contact" system used to evaluate the job performance of police officers. Because we find the statutory language plain and unambiguous, we may not resort to the legislative history or other aids of statutory construction. *Raab*, 2019 IL 124641, ¶ 18. Thus,

we reject the City's argument relying on the legislative history and debates to construe section 11-1-12.

¶ 23     Here, the City's activity-points policy includes the issuance of citations as points of contact in evaluating the job performance of police officers. The policy requires full-time officers to meet a monthly activity-points minimum. The number of monthly activity points is used to discipline officers and to issue awards. The policy, at least indirectly, may compare police officers based on the number of citations issued because points are awarded for citations and officers are compared and receive awards based on points of contact. By granting awards based on points of contact, the policy may provide an incentive for officers to write citations to accumulate as many points as possible. In any event, the policy clearly violates section 11-1-12 by including the issuance of citations as points of contact, contrary to the express statutory language stating "[p]oints of contact shall not include *** the issuance of citations." 65 ILCS 5/11-1-12 (West 2016).

¶ 24     We emphasize that our holding does not preclude law enforcement agencies from implementing activity-points systems. Consistent with the plain language of section 11-1-12, a points-of-contact policy may be used to evaluate police officer performance on any number of subjects. According to the statute, a "point of contact" may be any "quantifiable contact made in the furtherance of the police officer's duties," other than "the issuance of citations or the number of citations issued." 65 ILCS 5/11-1-12 (West 2016). In this case, the City's policy awards points for a variety of activities other than issuing citations. The City may continue to evaluate officers on those activities to the extent they are "quantifiable contact[s] made in the furtherance of the police officer's duties." 65 ILCS 5/11-1-12 (West 2016). In accordance with the plain language of section 11-1-12, however, a points-of-contact system may not include the issuance of citations.

¶ 25     We recognize the argument by *amicus* that a fair points policy must account for the full range of officer activity and that the failure to include issuance of citations as part of duty performance undercuts important traffic safety enforcement programs. While those arguments raise important considerations, we are bound by the plain statutory language and may not alter it based on our views of proper public policy. The arguments of the City and *amicus*, seeking to include issuance of citations in points-of-contact systems, are more properly addressed to the

legislature. The statute, as it is currently written, expressly prohibits that practice, and the statute must be enforced as written.

¶ 26     We conclude that the circuit court erred in granting summary judgment in favor of the City on count I of the Union's complaint. The Union is entitled to summary judgment on count I because the City's activity-points policy violates section 11-1-12 of the Municipal Code (65 ILCS 5/11-1-12 (West 2016)). Accordingly, we affirm the appellate court's judgment reversing the circuit court's order and remanding for the circuit court to enter summary judgment in favor of the Union on count I of its complaint.

¶ 27                            III. CONCLUSION

¶ 28     For the above reasons, the appellate court's judgment is affirmed.

¶ 29     Appellate court judgment affirmed.

¶ 30     Circuit court judgment reversed.

¶ 31     Cause remanded.